IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America,<br><br>  v.<br><br>NEIL K. ANAND<br>ASIF KUNDI<br>ATIF MAHMOOD MALIK,<br>VIKTORIYA MAKAROVA | Case No. 2:19-cr-00518 |

# **EMERGENCY MOTION FOR RECONSIDERATION AND REQUEST FOR LIMITED PRO SE AUTHORITY TO PRESERVE CONSTITUTIONAL RIGHTS**

Defendant Neil K. Anand, proceeding *pro se* for the limited purpose of this emergency motion, respectfully moves this Honorable Court for reconsideration of its Order dated September 8, 2025 (ECF No. 667). Dr. Anand seeks immediate, narrow relief to prevent the irretrievable forfeiture of his constitutional rights and a manifest injustice at sentencing on September 23, 2025, based on a Pre-Sentence Report ("PSR") that relies on provably erroneous, unconstitutional, and mathematically impossible evidence generated by a flawed algorithmic prosecution system. In support, he states as follows:

## I. INTRODUCTION & EMERGENCY BASIS

This is an emergency motion to prevent a manifest injustice that would sentence Dr. Anand to **30 years to life based on a case that epitomizes the systemic failure of algorithmic prosecution in federal criminal justice system.** The Court's September 8, 2025 Order leaves Dr. Anand in a constitutional trap: bound to attorneys who have declared, "We are not your counsel anymore," and threatened termination of communication with Dr. Anand enforced by law enforcement, yet forbidden from acting to effectively challenge a PSR that exemplifies the very prosecutorial misconduct and algorithmic bias that produces an inflated amount of incarceration. (Exhibit NA-44)

**This case demonstrates the blueprint of modern prosecutorial abuse:** algorithmic targeting of statistical outliers, parallel construction to hide the flawed methodology, Brady violations to conceal exculpatory evidence, and the use of demonstrably unreliable data to generate prosecutorial leverage. Dr. Anand was selected not because of criminal conduct, but because an error-prone algorithm flagged him as a statistical deviation—then prosecutors laundered that algorithmic analysis through cherry-picked evidence while concealing the system's 94% false positive rate and systemic unreliability. (Exhibit NA-48, Exhibit NA-49)

Newly discovered evidence confirms that both the drug quantities *and* the financial loss calculations in the PSR are legally and factually invalid. The drug weights are derived from a PDMP system the Commonwealth itself admits is systemically unreliable (Exhibit NA-44). The financial losses are based on Government exhibits that reveal a **fundamental accounting impossibility of $909,690** (Exhibit NA-45) and widespread file inaccuracies misrepresenting over **$700,000** in alleged payments (Exhibit NA-46, Exhibit NA-47). Forcing Dr. Anand to sentencing without the ability to file a motion to correct these specific, fatal errors constitutes the very "manifest injustice" that reconsideration is designed to prevent.

# II. BACKGROUND: THE ALGORITHMIC PROSECUTION PLAYBOOK IN ACTION

### A. The Targeting: Algorithmic Selection Masquerading as Investigation

1. **Isolation Forest Algorithm Targeting:** Dr. Anand was initially flagged not through traditional investigation, but through the DEA's use of algorithmic tools like the Isolation Forest algorithm applied to PDMP data. This algorithm has a documented **94% false positive rate in fraud detection**—meaning 94 out of 100 physicians it flags are not actually engaged in criminal conduct. (Exhibit NA-48; Exhibit NA-49)
2. **Statistical Outlier Criminalization:** The targeting was based on Dr. Anand prescribing in the **77th percentile nationally**—where 77% of U.S. physicians prescribed more than Dr. Anand, well within the mainstream of medical practice. The prosecution converted this statistical deviation into "suspicious" patterns, not because they indicated crime, but because they deviated from an algorithmic norm. (Exhibit NA-50)

3. **Cherry-Picked Sample:** From Dr. Anand's treatment of over 700 patients, prosecutors selected **14 patients (2% of his practice)** for prosecution. This mirrors the "parallel construction" documented in DEA training materials, where algorithmic tools are used to cherry-pick outliers, then build a "clean" case using only those outliers while scrubbing all reference to the algorithm. (Exhibit NA-51)

## B. The Evidence Laundering: Hiding the Algorithm Behind "Expert" Testimony

4. **Expert Laundering:** The prosecution deployed government experts who rubber-stamped the cherry-picked 2% sample without context, testifying that Dr. Anand's prescribing was "outside the usual course of professional practice." The jury heard medical-sounding conclusions—not the statistical reality that this was a deliberately biased, algorithmically-selected sample. (Exhibit NA-48)
5. **Daubert Gatekeeping Failure:** The Court admitted algorithm-derived evidence without *Daubert* scrutiny. The algorithmic selection process was never subjected to testing for error rates, peer review, or general acceptance—it was simply treated as an "investigative lead" while its prejudicial impact poisoned the trial. (Exhibit NA-52)
6. **Brady Violations as Policy:** Prosecutors routinely withheld exculpatory evidence about the algorithmic selection process and the PDMP system's known unreliability—the very fact that the case was initiated by a system with a 94% false-positive rate. (Exhibit NA-49)

## C. The Current Crisis: A PSR Built on Impossible Mathematics and Unreliable Data

7. On September 2, 2025, Dr. Anand filed a detailed letter (ECF No. 657) notifying the Court of his termination of court-appointed counsel due to their failure to address critical, time-sensitive issues, including **the catastrophically flawed PSR.**
8. **PDMP Drug Weight Calculations:** The PSR's drug weight calculation, which mandates a guideline sentence of 30 years to life, is based exclusively on data from the Pennsylvania PDMP. The PDMP's own documentation proves this data is **constitutionally unreliable for sentencing** due to systemic "Fatal Errors," "Serious

3

Errors," and "Patient Matching Errors" that corrupt the data. The Commonwealth of Pennsylvania itself admits these systems have accuracy problems that make them unsuitable for prosecutorial use. (Exhibit NA-44)

9. **The $909,690 Accounting Impossibility:** Government Exhibits 210 and 211 (Exhibit NA-45) reveal a fundamental accounting impossibility that defies basic mathematics: they show total pharmacy benefit manager payments of $2,960,583, yet claim Dr. Anand's accounts received $3,870,273—**a discrepancy of $909,690 more received than paid.** This violates basic accounting principles and proves the Government's financial analysis is fundamentally flawed.

10. **Pervasive File Errors:** Defense analysis has identified widespread errors in the government's own files (309A, 304, 301, 303, 722), including (Exhibit NA-46,NA-47):
    - Quadruple-counting of insurance claims
    - Attributing claims to doctors unaffiliated with Dr. Anand
    - Claims dated before the pharmacy allegedly used even existed
    - Demonstrably false payment attributions confirmed by official insurance explanation of benefits
    - Claims for non-existent insurance members

11. **Formal Termination Following Complete Communication Breakdown:** On August 29, 2025, during a meeting witnessed by his parents, the attorney-client relationship irretrievably broke down when counsel explicitly declared "We are not your counsel anymore" while simultaneously refusing to withdraw from representation. Following this breakdown, counsel threatened to enforce non-communication through law enforcement action, making direct attorney-client communication impossible. This led to Dr. Anand's immediate formal termination of counsel that same day, followed by his detailed September 2, 2025 letter to this Court. Since August 29, limited communication has occurred only through Dr. Anand's family members as third-party intermediaries, as Dr. Anand cannot attend in person due to counsel's law enforcement threats. Dr. Anand is actively communicating with several alternative attorneys to secure new representation. Despite being formally terminated and the complete communication breakdown, counsel have neither sought court-approved withdrawal nor filed the necessary motions to resolve outstanding issues of law and fact as well as a **Motion to Correct the Final PSR** or

challenge the mathematically impossible evidence. The inaction and ineffectiveness of my Court appointed attorneys ensures a sentence based on **mathematically impossible and factually erroneous** information.

## III. LEGAL STANDARD FOR RECONSIDERATION

Reconsideration is necessary to "correct a clear error of law or to prevent manifest injustice." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Sentencing a defendant based on the output of demonstrably unreliable algorithmic systems and financially impossible calculations, while denying him any mechanism to challenge this evidence, constitutes the paramount manifest injustice that reconsideration is designed to prevent.

## IV. ARGUMENT

### A. The Court's Order Perpetuates a System Designed to Bury Methodological Flaws

Dr. Anand's case exemplifies this system (Exhibit NA-52):

1. **Pre-Trial Coercion Through Algorithmic "Evidence":** The algorithmic flag—however statistically invalid—became the basis for prosecutorial leverage. The algorithm's 94% false positive rate didn't matter because it provided sufficient intimidation to pressure plea agreements in 89.5% of similar cases. (Exhibit NA-53)
2. **Discovery Starvation:** Dr. Anand was denied access to the algorithm's methodology, training data, and risk factors. Without knowing how he was targeted, he could not effectively challenge the basis of the prosecution. (Exhibit NA-48)
3. **Parallel Construction:** Prosecutors used the algorithm's tool to cherry-pick the sickest 2% of his practice, then built a "clean" case using only those outliers while concealing the algorithmic origin and the broader context that would have shown his prescribing was medically appropriate. (Exhibit NA-51)

## B. The PSR Violates Due Process by Relying on Demonstrably Unreliable Evidence

The Due Process Clause requires that sentencing determinations be based on reliable evidence. *United States v. Kikumura*, 918 F.2d 1098 (3d Cir. 1990). The PSR violates this fundamental principle in multiple ways:

1. **PDMP Data Unreliability:** The drug weight calculations rely on PDMP data that Pennsylvania itself acknowledges contains systematic errors that render it unreliable for prosecutorial purposes. (Exhibit NA-44)
2. **Impossible Financial Calculations:** The loss calculations are based on exhibits showing $909,690 more received than paid—a mathematical impossibility that proves the underlying methodology is fundamentally flawed. (Exhibit NA-45,NA-46,NA-47)
3. **Systematically Biased Sample:** The conviction was based on a deliberately biased 2% sample that excluded 98% of Dr. Anand's medical practice, violating the principle that sentencing must be based on a fair representation of the defendant's conduct. (Exhibit NA-50)

## C. This Prosecution Represents an Impermissible Expansion of Federal Power

This case represents the criminalization of medical practice through algorithmic targeting, violating fundamental principles of federalism and due process:

1. **Federalism Violation:** The Government's case represents an impermissible expansion of federal power into the practice of medicine, an area traditionally reserved to the states. *United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000).
2. **Algorithmic Criminalization:** The prosecution criminalizes statistical outliers from an algorithmic model, not actual criminal conduct as required by *United States v. Moore*, 423 U.S. 122 (1975).

3. **Constitutional Infirmity:** When both the selection methodology and the underlying evidence are shown to be systemically flawed and unreliable, the constitutional infirmity is compounded beyond remedy.

### D. The Irreparable Harm is Quantifiable, Imminent, and Systematic

The harm extends beyond Dr. Anand's specific case to the integrity of the federal criminal justice system:

1. **Individual Harm:** A specific, quantifiable, and irreversible additional **30-year incarceration** based on a $900,000 accounting error and knowingly unreliable prescription data.
2. **Systematic Harm:** Allowing this sentencing to proceed validates the use of unreliable algorithmic evidence and impossible mathematics in federal prosecution, encouraging similar abuses.  (Exhibit NA-51)
3. **Waiver Risk:** If the motions to correct the PSR are not filed before sentencing, these fundamental constitutional claims will be waived, preventing appellate review of the systematic flaws.

## V. REQUESTED RELIEF

To prevent this manifest injustice and protect the integrity of the federal criminal justice system, Dr. Anand requests that the Court grant this Emergency Motion for Reconsideration and issue an order:

1. Allowing a reasonable grace period of 30 days to find alternative counsel to file:
    - A Motion to Correct the Presentence Report and Exclude Unreliable Algorithmic/PDMP Data and Mathematically Impossible Financial Evidence
    - A *Daubert* Motion to exclude algorithmic evidence that fails scientific reliability standards
    - The Rule 33 Motion for a New Trial (draft previously provided)
    - The Motion for Release on Bond Pending Appeal (draft previously provided)

2. Directing the Court Reporter to immediately prepare and file the missing transcripts of the closing arguments.

This request is narrowly tailored to resolve the immediate crisis while addressing the broader systematic issues that threaten the integrity of federal criminal prosecution.

## VI. CONCLUSION

Dr. Anand's case represents everything wrong with algorithmic prosecution: the criminalization of statistical outliers, the laundering of unreliable evidence through expert testimony, the concealment of methodological flaws, and the use of mathematically impossible calculations to justify decades of imprisonment.  (Exhibit NA-49)

Dr. Anand should not be sentenced to life in prison to preserve that statistic when the underlying evidence is demonstrably false and the methodology is constitutionally flawed.  (Exhibit NA-48, Exhibit NA-51)

The Court has an opportunity to reject this systematic abuse and demand that federal prosecution be based on reliable evidence and constitutional principles, not algorithmic intimidation and mathematical impossibilities. For the foregoing reasons, this Emergency Motion for Reconsideration should be granted.

Respectfully submitted,

*/s/ Neil Anand*
NEIL ANAND, M.D.
Defendant, Pro Se for Limited Purpose
1313 Cheltenham Drive
Bensalem, PA 19020
Email: cardiacgasman@gmail.com
Phone: 267-934-9784

Dated: September 11, 2025

PROOF OF SERVICE

I hereby certify that on September 11, 2025, I presented the foregoing emergency motion to the Clerk of the Court through the Pro Se Electronic Document System (EDS) System, submitted in PDF format, to ECF System for filing and uploading to the ECF system, which will send notification of such filing to the relevant attorneys of record.

/s/ *Neil Anand*

Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America,<br><br>v.<br><br>NEIL K. ANAND<br>ASIF KUNDI<br>ATIF MAHMOOD MALIK,<br>VIKTORIYA MAKAROVA | Case No. 2:19-cr-00518 |

# PROPOSED ORDER

AND NOW, this _____ day of September 2025, upon consideration of Defendant Neil Anand's Emergency Motion for Reconsideration, it is hereby ORDERED that:

1. Defendant is allowed a reasonable grace period of 30 days to find alternative counsel to file:
   - Motion to Correct the Presentence Report and Exclude Unreliable Algorithmic/PDMP Data and Mathematically Impossible Financial Evidence
   - *Daubert* Motion to exclude unreliable algorithmic evidence
   - Motion for a New Trial pursuant to Fed. R. Crim. P. 33
   - Motion for Release on Bond Pending Appeal pursuant to 18 U.S.C. § 3143(b)
2. The Court Reporter SHALL PREPARE AND FILE the missing transcripts of the closing arguments no later than September 18, 2025.

BY THE COURT:

_____

HON. CHAD F. KENNEY
United States District Judge